IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | CRIMINAL ACTION NO. |
| | : | 1:21-cr-00304-LMM-JEM-1 |
| PEDRO SANTACRUZ, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

This matter is before the Court on the Magistrate Judge's Report and Recommendation ("R&R"), Dkt. No. [66], recommending denial of Defendant Pedro Santacruz's Motion to Suppress Statements, Dkt. No. [44]. Defendant has filed objections to the R&R. Dkt. No. [70]. After due consideration, the Court **OVERRULES** the objections, **ADOPTS** the R&R, **DENIES** Defendant's motion, and **SETS** the case for trial.

**I.    Motion to Suppress Statements**

The indictment charges Defendant with two offenses: possession with intent to distribute and conspiracy to possess with intent to distribute a controlled substance, namely, at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841 and 846 and 18 U.S.C. § 2. Dkt. No. [11]. Defendant now moves pursuant

1

to the Fifth and Fourteenth Amendments to the United States Constitution for suppression of statements he made on or about June 24, 2021, during an interview with government agents. Dkt. No. [44]. He argues he made the statements to the agents because they falsely assured him that his statements would not be disseminated, and thus, his statements were not freely and voluntarily made. Id. at 1-2. In the R&R, the Magistrate Judge recommended that the motion be denied. Dkt. No. [66].

Defendant concedes that the agents read him his Miranda warnings,[1] which included a warning that anything Defendant said could be used against him in court. Dkt. No. [70] at 1. He argues, however, that the agents subsequently promised him that they would keep his statements to themselves, thereby invalidating the Miranda warnings and rendering his statement non-voluntary, and that the Magistrate Judge failed to find the Miranda warnings invalid because she applied an erroneous legal standard by which she "essentially den[ied] relief on the basis that [Defendant] was never promised that no prosecution would occur." Id. at 2-19.

### A.  Legal Standard

Under 28 U.S.C. § 636, the Court reviews a Magistrate Judge's R&R for clear error if no objections are filed. 28 U.S.C. § 636(b)(1). If a party files

---

[1]     Miranda v. Arizona, 384 U.S. 436 (1966).

2

objections, however, the district court must review de novo any part of the Magistrate Judge's disposition that is the subject of a proper objection. Id.

### B.   Discussion

"Before a suspect's uncounseled incriminating statements made during custodial interrogation may be admitted, the prosecution must show 'that the suspect made a voluntary, knowing and intelligent waiver of his privilege against self-incrimination and his right to counsel.' " United States v. Lall, 607 F.3d 1277, 1282 (11th Cir. 2010) (quoting United States v. Beale, 921 F.2d 1412, 1434 (11th Cir. 1991)). This showing requires that (1) the relinquishment of the right to remain silent was "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and (2) the waiver was made with "a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 1283. Whether the relinquishment of the right to remain silent was the result of a voluntary, knowing, and intelligent waiver is determined based on the totality of the circumstances. United States v. Farley, 607 F.3d 1294, 1327 (11th Cir. 2010). Factors that a court can consider when evaluating the totality of the circumstances include the defendant's education, his intelligence, the lack of any advice of his constitutional rights, the length of detention, the repeated or prolonged nature of the questioning, the use of promises or threats by the police, and the use of physical punishment, such as depriving the defendant of sleep or food. United States v. Bernal-Benitez, 594 F.3d 1303, 1319 (11th Cir. 2010); Hubbard v. Haley, 317 F.3d 1245, 1253 (11th Cir.

2003). The prosecution must prove waiver by a preponderance of the evidence. Missouri v. Seibert, 542 U.S. 600, 608 & n.1 (2004).

The use of deception to obtain a confession is also an important factor in considering the totality of the circumstances. Lall, 607 F.3d at 1285. Be that as it may, trickery and deceit are prohibited only to the extent they prevent the defendant "from understanding the nature of his rights and the legal consequences of waiving them." Farley, 607 F.3d at 1328. While misrepresentations of fact are insufficient to undermine a Miranda waiver and render a subsequent statement involuntary, misrepresentations of law "are more likely to render a self-incriminating statement involuntary." Id. at 1285, 1287; see also United States v. Castor, 598 F. App'x 700, 703-04 (11th Cir. Feb. 3, 2015) (finding Miranda violation where officer "misled [the defendant] regarding the consequences of relinquishing his right to remain silent when he assured him that he could not charge him with any other drugs"); Hart v. Att'y Gen. of State of Fla., 323 F.3d 884, 893-95 (11th Cir. 2003) (finding Miranda violation where the officer responded to the defendant's request for clarification of his rights by stating that a disadvantage of having a lawyer is that the lawyer would prevent him from answering questions and that "honesty wouldn't hurt him"); Beale, 921 F.2d at 1435 (finding Miranda violation where testimony showed that the defendant signed waiver only after the agent told him that signing the waiver form would not hurt him). "[G]iven the uniquely influential nature of a promise from a law enforcement official not to use a suspect's inculpatory statement, such

4

a promise may be the most significant factor in assessing the voluntariness of an accused's confession in light of the totality of the circumstances." Lall, 607 F.3d at 1286 (internal quotation marks omitted).

It is true, as Defendant points out, that the agents who conducted the interview at issue here stated that Defendant's statements would "stay here" and would not be "leaked." Interview Transcript ("Tr."), Dkt. No. [52-1], at 10, 33, 35-36.[2] However, having carefully reviewed the hearing transcript and the audio recording and transcript of the interview, the Court concludes that, under the totality of the circumstances, Defendant's waiver of his Miranda rights was the product of free and deliberate choice rather than intimidation, coercion, or deception and was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. Thus, Defendant made a voluntary, knowing, and intelligent waiver of his Miranda rights.

First, there is no evidence that Defendant was intimidated or coerced into waiving his rights. The agents' weapons were holstered, Defendant was handcuffed in front, and he was not threatened in any way. Tr. of Mot. Hrg. ("Hrg."), Dkt. No. [55], at 16, 29; see generally Tr. The interview lasted only about 34 minutes.

---

[2] Where the original page numbering conflicts with the numbering assigned by the Court's electronic filing system, the Court will refer to the original page numbering.

Second, Defendant received advice of his constitutional rights and both signed a written Miranda waiver and orally acknowledged his rights. Tr. at 2-4; Dkt. No. [52-2]. He also never expressed confusion regarding his rights or asked for counsel. See generally Tr. The agents also made clear that they could not make him promises about what his statements would mean for his prosecution. Tr. at 32-33.

Third, there is no evidence that any characteristics of Defendant caused him to have difficulty understanding or exercising his Miranda rights. Defendant was an adult at the time of the interview, and there is no evidence of low intelligence, fatigue, illness, or intoxication. Defendant also displayed his ability to understand and exercise his rights when he forthrightly refused to answer questions about his father's activities or allow agents to search his cell phones. Tr. at 4, 14, 21, 30. Defendant additionally exhibited knowledge and at least some command of the criminal-investigation process by suggesting to the agents that he would consider acting as a cooperating witness or confidential informant. See Tr. at 8, 17, 32.

Finally, there has been no showing that Defendant was induced to talk by a promise of confidentiality. It first bears remark that while it is literally true that the agents said Defendant's statements would "stay here" and would not be "leaked," Tr. at 10, 33, 35-36, Defendant and the agents spoke in a manner that relied heavily on innuendo, and context and tone are therefore crucial to interpretation of Defendant's concerns and the agents' assurances. And the

6

context of the statements and tone of the interview indicate that Defendant was willing to talk so long as he was assured that his cooperation would be kept secret from others in his organization or those who might inform them.

Notably, after receiving a reading of his Miranda rights and signing the waiver form, Defendant immediately made self-incriminating statements: he claimed ownership of a gun and pills the agents found in his bedroom, admitted to being a small part of a large operation, admitted to keeping a ledger to track money he was forwarding to Mexico, and admitted to delivering money to people in Mexico who he knew by the nicknames "Sir" and "Polly." Tr. 5-8. He did so knowing that the agents were investigating drug trafficking. Tr. 5. When the agents began asking questions about the bigger operation, Defendant suggested that he would give them more information if they would acknowledge his cooperation, but he signaled that he was reticent about answering questions about the bigger operation because he feared for his and his family's safety, stating that he tended not to ask questions about the operation because, "ummm . . . You know what happens when you have too much to say," "I just want this to stay here ok . . . ?" and "Because I have kids . . . you know what I'm saying?" Tr. 8-10, 19. After the agents agreed, "Just so we are on the same page, this doesn't come out . . . doesn't come out, ok. What is discussed here, stays here . . . We're not going to go and . . . you know, it stays here . . . just so you know," Tr. at 10, Defendant made his fear of the others in the operation even plainer when he stated to the agents that a drone had been overhead, that people were watching,

that he knew it was a bad idea to keep the money ledger but kept track because "if something gets lost and I'm told it's my bad," and that the pills agents had found—and that he had initially claimed as his own—were not actually his but instead were contraband he was told to hold, Tr. at 15, 20, 23.

Moreover, Defendant's and the agents' interactions throughout the conversation indicated that none of them expected for Defendant's statements to remain among just the three of them. Defendant refused to say anything incriminating about his father and demurred when asked about interstate operations. See Tr. at 14-15, 20, 30. Defendant also asked for acknowledgment of his cooperation in writing, which certainly suggests that he expected the agents to disseminate his statements. Tr. at 33-34, 36. The agents also did not promise not to use Defendant's statements but instead promised to tell lawyers and judges about what Defendant had said. Tr. at 9-10, 19, 32-36.

The Court has also reviewed the cases upon which Defendant relied in his briefing before the Magistrate Judge—United States v. Becker, 762 F. App'x 668 (11th Cir. Feb. 19, 2019) (per curiam); Lall; and Hopkins v. Cockrell, 325 F.3d 579, 584-85 (5th Cir. 2003)—but does not find that any of the cases are particularly helpful to him. In the Becker opinion, the court found that the district court did not err in concluding that the defendant had voluntarily and knowingly waived his Miranda rights. Becker, 762 F. App'x at 673-74. In Lall and Hopkins, the courts did find that judging from the totality of the circumstances, trickery and deceit rendered the defendant's statements involuntary, but they did

8

so based on evidence of vulnerability and deceit that is not present in the instant case. Lall is distinguishable because it turned on the officer's having undermined the Miranda warnings with an express assurance that he would not pursue any charges against the defendant, a fact pattern no one argues is present here. Compare Lall, 607 F.3d at 1283 with Dkt. No. [70] at 14-16. Lall, a twenty-year-old who lived in his parents' house, was also likely more easily manipulated than Defendant, a man who was raising children of his own. Compare Lall, 607 F.3d at 1287 with Tr. at 19, 29, 31. In Hopkins, the evidence of vulnerability and deceit was even greater that in Lall: the defendant had been in isolation for 15 days, and after he had been interviewed eight times, an officer who the defendant considered an old friend was brought in to interview him for the ninth time. Hopkins, 325 F.3d at 584. That officer assured him that they were friends and that their conversation was confidential, telling him, "This is for me and you. This is for me. Okay. This ain't for nobody else," and, "[Y]ou ain't got absolutely nothing to hide from me." Hopkins, 325 F.3d at 584 & n.4. The assurance came after the defendant indicated to the officer that he did not want to talk too loudly for fear that officers outside the room might hear them discussing the murder. Id. at 584. Here, in contrast, there was no special relationship between Defendant and his interviewers, no evidence of vulnerabilities, and no assurance of confidentiality or non-prosecution, but rather a promise to prevent "leaks" so that Defendant's cooperation would not compromise his safety. Thus, none of

Defendant's cases persuade the Court that Defendant's Miranda warning was rendered ineffective.

For all of these reasons, the Court finds that Defendant does not have a constitutional right to suppression of his statements. Therefore, pursuant to 28 U.S.C. § 636(b)(1), the Court **OVERRULES** Defendant's objections; **ADOPTS** the Magistrate Judge's Report and Recommendation, Dkt. No. [66]; and **DENIES** Defendant's Motion to Suppress Statements, Dkt. No. [44].

## II. Order Setting Trial

The Court hereby sets the trial in this case to begin on **Wednesday, November 30, 2022, at 9:30 AM** in Courtroom 2107, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia. The pretrial conference is set for Wednesday, November 16, 2022, at 10:00 AM in Courtroom 2107. By noon on Wednesday, November 2, 2022, the parties are to file their respective motions in limine and voir dire questions. By noon on Wednesday, November 2, 2022, the Government is to file a brief statement of facts the parties can rely on for voir dire. By noon on Wednesday, November 9, 2022, the parties are to file any objections to those items listed above. Requests to charge and verdict forms should be filed on CM/ECF and e-mailed to the Courtroom Deputy Clerk in Word format by noon on Tuesday, November 29, 2022. The time from September 29, 2022, through November 30, 2022, shall be excluded from computation under

the Speedy Trial Act pursuant to 18 U.S.C. § 3161(h)(7)(A), (h)(7)(B)(i), and (h)(7)(B)(iv).

The Court requires the parties to e-mail an exhibit and witness list to the Courtroom Deputy Clerk by Tuesday, November 29, 2022. The list shall contain an identifying description of each exhibit to the right of the exhibit numbers. The list shall be double spaced with approximately 1.5 inches of space to the left of the number for court use. Additionally, the parties are required to deliver to chambers the morning of trial a tabbed exhibit notebook for the Court's use. Counsel shall comply with the Local Rules of this Court regarding exhibits. Any exhibit larger than 8 ½" x 11" will be returned to counsel pursuant to LR 79.1(B)(5), NDGa. Within ten (10) days following the conclusion of a trial or hearing, all parties must file photographs or other appropriate reproductions of oversized and non-documentary exhibits admitted as evidence at the trial or hearing. The parties must provide a courtesy copy of any documents e-filed just prior to trial or on any day during the course of the trial.

Courtroom 2107 is technology equipped. Any training or trial runs regarding the courtroom technology must be scheduled in advance of trial via the Courtroom Deputy Clerk. The Court will not allow time for training or trial runs at the beginning of the trial. Any motions requesting leave to bring technology into the courtroom must be filed prior to the pretrial conference, to allow time for proper notification to the U.S. Marshals Service.

It is the responsibility of counsel to immediately notify the Courtroom Deputy if a defendant requires interpretive services for any court proceeding so that services can be arranged. It is the responsibility of counsel to arrange interpretive services for any witnesses needing assistance of an interpreter for any court proceeding.

**IT IS SO ORDERED** this 29th day of September, 2022.

_____
**Leigh Martin May**
**United States District Judge**